GUINDON v. CARGOES OF CANAL BOATS ZENITH, ADELPHI, AND
GOLD DUST.

(District Court, W. D. New York.   June 8, 1912.)

SALVAGE (§ 18*)—RIGHT TO COMPENSATION—SERVICES TO VESSELS ON FIRE.

Libelant was owner and master of a steam canal boat which towed three other canal boats, laden with cargo consigned to claimant, into claimant's slip, where they became exposed to serious danger from a fire which started in a nearby building.  Being prevented from taking any of the boats out of the slip by the presence therein of fire tugs, libelant employed the fire apparatus on his boat in keeping down the fires which were started on his own and the other boats after their own crews had left them; neither having any fire appliances of its own.  In this work he was aided toward the last by the fire department, with the result that the boats were not greatly injured, and their cargoes were saved.  *Held*, that libelant's relation to his tows was not such as to preclude his recovery for salvage services rendered to them, and that while there could be no recovery for services rendered by, or losses to his vessel, which were incident to her own protection, libelant was entitled to recover salvage compensation for his services rendered to the other boats and their cargoes.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 31–43; Dec. Dig. § 18.*

Salvage awards in federal courts, see note to the Lamington, 30 C. C. A. 280.]

In Admiralty.  Suit by William Guindon, owner and master of the steam canal boat Deland, against the cargoes of the canal boats Zenith, Adelphi, and Gold Dust; Western Transit Company, claimant. Decree for libelant.

Gibbons & Pottle (Frank Gibbons, of counsel), for libelant.
Brown, Ely & Richards, for respondent.

HAZEL, District Judge.  The libelant, William Guindon, has filed a libel against the cargoes of the canal boats Zenith, Adelphi, and Gold Dust to recover for the salvage services rendered by him for the benefit of such cargoes on the 1st day of November, 1909.  It appears that about 7 o'clock in the evening, while the said canal boats were lying at the wharf in the Western Transit Company's slip, a fire broke out in an adjacent building close to where the canal boats and the Deland, the steam canal boat which towed them, lay.  None of the canal boats against whose cargoes the libelant has proceeded possessed any fire-fighting apparatus, and the claim is that had it not been for the services of libelant, and the fire apparatus of the Deland, the said cargoes would have been destroyed by fire.  The Western Transit Company was the consignee of the cargoes, and it claims that the fire on the canal boats was extinguished by the fire tugs and apparatus of the fire department of the city of Buffalo; that whatever services were performed by libelant were performed in saving the steam canal boat Deland of which he was owner and master, and not otherwise.

The evidence is that the fire broke out in the shed in front of the pier, and that to escape the flames libelant, with the assistance of

the steam canal boat Deland, endeavored to back the canal boats out of the slip. Efforts in this direction, however, were unsuccessful, owing, to the arrival of the fire tugs Grattan and Hutcheson, which came· into the mouth of the slip close to the canal boat Gold Dust, and interfered with the movements of the canal boats, so that libelant, on account thereof and because of the density of the smoke, was unable to leave the slip. The libelant swears that he· asked the·firemen in charge of the fire tug Grattan to pump water on the Deland and her consorts which had caught fire from flying sparks, and were then burning at different parts, but that his request received no immediate attention; the firemen playing water on the shed and pier. The·Zenith was the first of the consorts to catch fire; flames on the Adelphi and Gold Dust soon following. The fire lasted upwards of two hours, and, though the crews of the Zenith, Adelphi, and Gold Dust shortly after the arrival of the fire tugs, when the fire threatened the destruction of their boats and the heat had become unbearable, left them, the libelant remained, and rendered services aboard the Deland and her consorts. He played a stream of water from a two-inch hose on the three canal boats, and on the Deland, and succeeded in extinguishing a number of incipient fires upon the different boats. It ·is shown that after the fire was wholly extinguished the·Deland was found to have been burned, not only at the end, but also amidships on the deck and sides, while the hatches· of the other canal boats were burned and charred. It is stoutly denied by respondent that the libelant performed any valuable services in the way of saving the canal boats or their cargoes; the claim being that the firemen in the employ of the city, not only arrived promptly upon the scene of the fire, but that they almost immediately pumped water upon the pier, shed, and said canal boats.

The evidence as to the extinguishment of the flames on the canal boats·is very conflicting in many particulars. The libelant has sworn, and there is corroboratory evidence tending to show, that not until the fire tug Grattan left for the city elevator, where another fire had broken out, did she put any water upon any of the canal boats except the steam tug Deland, and that he was the only one to pour water at different times on the other boats which were aflame from one end to the other. It is not altogether unlikely that the extent of the services performed by Guindon is somewhat exaggerated, as it appears clearly enough that firemen on the Grattan and on the shore later from time to time pumped water upon the canal boats. For instance, fireman Goodrich testifies that he threw water on the steam canal boat three or four times, and that the flames upon the other boats also were extinguished by the fire tug before the Grattan left for the elevator. Although the services of the firemen can scarcely be overestimated, still I am persuaded that libelant performed services which were helpful and tended to protect and did protect the cargoes of the Zenith, Adelphi, and Gold Dust, and that, therefore, he is entitled to salvage compensation. Even if it were absolutely true that the firemen extinguished the flames, the libelant would not there-· by be wholly deprived·of recovery, but it is fairly shown that he

also rendered efficient services towards such extinguishment. That there was danger of the destruction of the three canal boats by fire is beyond controversy; and that there were flames on the different boats at different times which were extinguished by the efforts of the libelant is satisfactorily shown, though the fire department with its powerful hose is doubtless entitled to the principal credit for their extinguishment.

The respondent asserts that the canal boats were trespassers in the slip, as it was shown that a rule of the respondent, of which the libelant had knowledge, required that before entering the slip report should first be made to the Western Transit Company, and permission to enter obtained. Guindon swore that such permission was obtained by him, but this is denied by respondent's witnesses. If it were necessary to decide that in this particular the libelant has not maintained the burden of proof, I should have no hesitation in so doing, but such evidence in my opinion was irrelevant. It is difficult to conceive how libelant could have anticipated the fire, or how he can be held to have voluntarily placed the canal boats in a position of danger simply because he did not first obtain permission to enter the slip, if such was the case.

Libelant claims to be entitled to recover a salvage award of $1,000, $500 for personal injuries, and $200 for the destruction of hose and lanterns on board the Deland. There can be no salvage award for any services by the Deland, or for services by her master in saving her. The rule is that neither the crew nor the master of a vessel can recover salvage compensation for services rendered in the saving of their own ship. Abbot's Merchant Ships and Seamen (14th Ed.) 968; Gilchrist Transportation Co. v. 110,000 Bushels of No. 1 Northern Wheat (D. C.) 120 Fed. 432. The services of the Deland to her consorts were incidental to her own safety, and she therefore cannot recoup from the cargo or freight of the other canal boats her damages and loss occasioned by the fire. The services rendered by libelant in extinguishment of the fires on the Zenith, Adelphi, and Gold Dust come under a different rule. It was generally held in The Blackwall, 77 U. S. 1, 19 L. Ed. 870, that:

"Useful services of any kind rendered to a vessel or her cargo, exposed to any impending danger and imminent peril of loss or damage, may entitle those who render such service to salvage reward."

There was no such relation between the master of the Deland and her consorts and their cargoes as would deprive him of the right to recover for protection to them and their cargoes. But the character of the services and the circumstances under which they were rendered were scarcely such as call for a large award, as the valuable services rendered by the fire department in finally extinguishing the flames prevent a liberal compensation. However, the services rendered by the libelant, in view of the fact that the crew left their boats because of the heat and threatened danger, manifestly involved some risk, and their performance under such conditions is accordingly to be en-

couraged. For the entire services performed I think an award of $750 in full compensation for the injuries sustained and as salvage award is sufficient, such amount to be borne proportionately by the imperilled Zenith, Adelphi, and Gold Dust, and their respective cargoes.